UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

ANGELO CARZOGLIO,

                            Plaintiff,

        -against-

VINCENT PAUL, et al.,

                            Defendants.
_____

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___02/26/2024___

No. 17 Civ. 3651 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge

Angelo Carzoglio ("Plaintiff") commenced this 42 U.S.C. § 1983 action, proceeding *pro se*, against New York State Court Officers Sergeant Vincent Paul ("Sgt. Paul"), Deirdre Carroll ("Officer Carroll"), and Sergeant John Rhodes ("Sgt. Rhodes") (collectively, "Defendants"), asserting claims for excessive force and violation of his constitutional right to self-representation. (Complaint ("Compl."), ECF No. 2.) Presently before the Court is Defendants' motion for summary judgment (the "Motion") on all of Plaintiff's claims. (ECF No. 87.) For the following reasons, the Court GRANTS the Motion in its entirety.

## BACKGROUND

### I.    Factual Background

Plaintiff is an incarcerated individual currently housed at Wende Correctional Facility. On October 21, 2014, he was arrested and later indicted on numerous counts of burglary, among other charges ("the State Charges"), and was detained before trial at Westchester County Jail (the "Jail"). (Defendants' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Defs.' 56.1"), ECF No. 94, ¶¶ 3, 5; Plaintiff's Opposition ("Opposition" or "Pltf.'s Opp."), ECF

1

No. 99, at 1.)[1] At all times in connection with the State Charges, Plaintiff proceeded *pro se*. (Pltf.'s Opp. at 1.)

On May 14, 2015, Plaintiff was transported by Westchester County Department of Corrections ("DOC") officers at approximately 8:00 a.m. or 8:30 a.m. from the Jail to the Westchester County Courthouse (the "Courthouse") to be arraigned on the State Charges before Judge Robert Neary. (Defs.' 56.1 ¶ 16.) Upon arrival, he was escorted with other incarcerated persons to the basement, where he was placed in a holding cell under the custody of DOC officers. (*Id.* ¶ 17.) DOC officers then escorted him by an elevator to the third floor, where Judge Neary's courtroom was located. (*Id.* ¶ 18.) Judge Barry Warhit's courtroom was located on the same floor. (*Id.*)

Upon exiting the elevator, DOC officers escorted Plaintiff to Detention Area 3-115 to be transferred to the custody of New York State Unified Court System ("UCS") officers and detained temporarily in a holding cell before being taken to Judge Neary's courtroom. (*Id.* ¶¶ 19-20.) Shortly thereafter, Officer Carroll entered the detention area and directed Plaintiff to turn around and place his hands behind his back to be cuffed. (*Id.* ¶ 23; Pltf.'s Opp. at 8.) Standard UCS security protocol requires that incarcerated persons always remain handcuffed within the Courthouse, other than when they are confined to holding cells, or when they are appearing in a courtroom and a judge grants authority for their restraints to be removed. (Defs.' 56.1 ¶ 9.) This requirement is a security measure to ensure that incarcerated persons cannot strike or grab anyone and does not distinguish between persons represented by counsel and those appearing *pro se.* (*Id.*)

---

[1] Plaintiff did not serve a response to Defs.' Defs.' 56.1, despite receiving notice of his obligation to do so. (*See* Certificate of Service, Nov. 7, 2022, ECF No. 84.) Plaintiff's Opposition contains a section entitled "Defendant's Statement of Material Undisputed Facts" in which he responds to some of the Defendants' factual contentions. (*See* Pltf.'s Opp. at 10-15.) The Court will construe this portion of the Opposition as setting out Plaintiff's version of events for purposes of deciding the Motion.

Plaintiff objected to the handcuffing protocol and requested instead that he be handcuffed with his hands in front of his body, *id.,* as he claims he had been in all court appearances prior May 14, 2015, Pltf.'s Opp. at 2.[2] Defendants claim he then raised his voice at Officer Carroll, yelled obscenities, and banged on and kicked his cell door. (Defs.' 56.1 ¶¶ 24-26.) Plaintiff, however, claims that Officer Carroll yelled obscenities at him and tried to strike him with the cell door. (Pltf.'s Opp. at 3, 10.)

Sgt. Paul was in Judge Warhit's courtroom at the time and heard the commotion in the detention area. (Defs.' 56.1 ¶ 27.) Judge Warhit stopped his proceedings and directed Sgt. Paul to investigate. (*Id.*) Sgt. Paul then entered the detention area and advised Plaintiff to cease the commotion. (*Id.* ¶ 28.) Plaintiff stated that his hands should not be cuffed behind his back because he was a *pro se* criminal defendant. (*Id.*) Sgt. Paul explained that rear-handcuffing was standard protocol and directed Plaintiff to comply, but he refused and insisted that his hands be cuffed in the front. (*Id.* ¶¶ 29-30; Pltf.'s Opp. at 9.) Sgt. Paul then told Plaintiff that a refusal to comply with the rear-handcuffing protocol constituted a refusal to attend his court appearance, since he could not be escorted to the courtroom unless his hands were cuffed behind his back. (Defs.' 56.1 ¶ 31.) Plaintiff indicated that he would not enter the courtroom unless he was cuffed in front. (*Id.* ¶ 32.) Defendants claim then that he cursed at Sgt. Paul and threatened him, saying in part, "Fuck you. I'll kick your ass." (*Id.* ¶ 33.)

After this exchange, Sgt. Paul left the detention area and directed Officer Carroll to contact the DOC officers to request their presence so that Plaintiff could be returned to their custody, and Officer Carroll complied. (*Id.* ¶ 34.) Shortly thereafter, Sgt. Paul advised Plaintiff that the DOC officers were on their way and that he would be returned to their custody. (*Id.* ¶ 35.) He again asked Plaintiff to comply with the rear-handcuffing protocol, this time to be

transferred into DOC custody, and Plaintiff again refused while kicking his cell door. (*Id.* ¶¶ 35-36.) Sgt. Paul closed the door to the detention area for about two minutes, leaving Plaintiff alone. (*Id.* ¶ 37.)

C.O. Saraireh and C.O. Schafranski of the DOC then arrived in the hallway outside the detention area. (*Id.* ¶ 38.) Officer Carroll opened the door to the detention area and several officers gathered to prepare for any issues relating to Plaintiff 's transfer. (*Id.* ¶ 39.) From outside the cell, Sgt. Paul again directed Plaintiff to voluntarily comply with the rear-handcuffing protocol, and he again declined. (*Id.* ¶ 40.) C.O. Saraireh also advised Plaintiff to comply and to calm down, but Plaintiff allegedly responded by shouting obscenities. (*Id.* ¶ 41.)

The holding cell door was then unlocked, and Sgt. Paul entered. (*Id.* ¶ 43.) He issued a final directive to Plaintiff to voluntarily comply with the rear-handcuffing protocol, but Plaintiff once again declined. (*Id.* ¶¶ 44-45.) Defendants claim then that Sgt. Paul then grabbed Plaintiff 's shirt in an attempt to turn him around to be handcuffed and Plaintiff reacted by using his hands on Paul's chest/shoulder area to shove him toward a wall of the holding cell. (*Id.* ¶¶ 46-47.) Plaintiff, however, claims Sgt. Paul actually tried to throw him to the ground, making him fear for his life, and Plaintiff defended himself by pushing Sgt. Paul away. (Pltf.'s Opp. at 11.) Plaintiff also contends that he "respectfully and diplomatically … pleaded with" Sgt. Paul to let him be handcuffed in the front. (*Id.* at 9.)

Officer Carroll, C.O. Saraireh, C.O. Schafranski, Sgt. Rhodes, and Court Officer James Gallagher then entered the cell to assist Sgt. Paul and restrain Plaintiff. (Defs' 56.1. ¶¶ 48-50.) Defendants claim that using their arms and hands, they pushed Plaintiff toward the rear wall of the cell. (*Id.*) They grabbed Plaintiff 's arms and upper body to restrain him and place his arms behind his back so that his hands could be cuffed. (*Id.* ¶ 52.) At one point, Sgt. Rhodes briefly

placed his left hand on the back of Plaintiff's head in an attempt to control the movement of his body by controlling the movement of his head, and to prevent him from biting Sgt. Paul. (*Id.* ¶ 53.) After eighty seconds or so from when Plaintiff first pushed Sgt. Paul, the officers placed him in handcuffs with his hands behind his back and walked him out of the cell. (*Id.* ¶ 56.)

Plaintiff's account paints a different picture. He contends that the Defendants punched, kicked, and/or struck him in the holding cell. (Declaration of Michael A. Berg in Support of Defendants' Motion for Summary Judgement ("Berg Decl."), Ex. 2, ECF No. 88-2, at 33:8-37:25.) In particular, while standing on the outside of the scrum of officers that surrounded Plaintiff, Defendants claim that Officer Carroll placed her right leg into the scrum to use her foot to restrain Plaintiff. (Defs.' 56.1 ¶¶ 54-55.) Plaintiff disagrees and argues that Officer Carroll "deliberately and intentionally kick[ed]" his legs and knees. (Pltf.'s Opp. at 12.) He also asserts that Sgt. Rhodes bent and twisted his arm. (*Id.*)

Once Plaintiff was in handcuffs and walked out of the cell, Sgt. Paul and Officer Gallagher escorted him down the hallway toward the elevator. C.O. Saraireh and C.O. Schafranski followed them. Plaintiff was placed into the elevator, at which point C.O. Saraireh and C.O. Schafranski took custody of him. He took the elevator down to the basement with the two corrections officers. (Defs. 56.1 ¶¶ 58-60.) A report prepared at the time by C.O. Saraireh states that he transported Plaintiff to the basement "without any incident." (*Id*. ¶ 61.) Plaintiff disputes Defendants' account of the elevator ride, and instead claims that Sgt. Paul slammed his head against the wall of the elevator upon entering. (ECF No. 88-2, at 41:1-42:14.) Plaintiff was later transported from the Courthouse back to the Jail with other prisoners. (Defs.' 56.1 ¶ 62.)

## II.     Procedural History

On May 15, 2017, Plaintiff commenced the present action pursuant to 42 U.S.C. § 1983, alleging, inter alia, violations of his Sixth and Fourteenth Amendment rights by Defendants. (*See* ECF No. 2.) On January 13, 2023, Defendants filed the instant Motion (ECF No. 87), as well as a memorandum in support thereof (ECF No. 96). Plaintiff filed an Opposition. (ECF No. 99.) Defendants also filed a reply brief. (ECF No. 104.)

### LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56(c), summary judgment must be granted if "there is no genuine issue of material fact and ... the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 n. 4 (1986). "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999) (internal quotations and citations omitted). In order to prove that a genuine issue of material fact exists, a plaintiff "may not rest upon the mere allegations or denials of the pleading[s]," but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "Conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

Courts must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). The moving party bears the initial burden of demonstrating an absence of genuine issues of material fact. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).

If the initial burden is met, the non-moving party "must produce specific facts indicating that a genuine issue of fact exists.  If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted."  *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotations and citations omitted) (alteration in original).

## DISCUSSION

### I.      Sixth Amendment Right to Self-Representation Claim

Plaintiff argues that by not acceding to his request that his hands be cuffed in front of his body prior to being escorted to Judge Neary's courtroom, Defendants violated his "right to continue Pro-Se/Self Representation in an accused criminal matter." (Compl. at 5; Pltf.'s Opp. at 9.)

"The Sixth Amendment guarantees a [criminal] defendant the right to forgo counsel and conduct his defense personally." *U.S. v. Hausa*, 922 F.3d 129, 134 (2d Cir. 2019); *see also Monroe v. Smith,* No. 16CIV2074AJNJCF, 2017 WL 933109, at *12 (S.D.N.Y. Mar. 8, 2017) ("[t]he right to counsel in the Sixth Amendment implies the correlative right to self-representation") (quoting *Faretta v. California*, 422 U.S. 806, 821 (1975)), *report and recommendation adopted,* No. 16-CV-2074 (AJN), 2017 WL 1740427 (S.D.N.Y. May 3, 2017). The right to self-representation applies at "all critical stages of a criminal prosecution, including pre-trial hearings," *Dallio v. Spitzer*, 343 F.3d 553, 560 (2d Cir. 2003), and "encompasses" the rights "to control the organization and content of [one's] own defense, to make motions, to argue points of law, to participate in *voir dire*, to question witnesses, and to address the court and the jury at appropriate points in the trial." *McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984).

Plaintiff has not cited, and the Court is unable to find, any cases suggesting that the Sixth Amendment right to self-representation includes the right to be escorted from a holding cell to a courtroom with hands cuffed in front of the body. Rather, the standard UCS safety protocol requires that *all* incarcerated persons, regardless of representation status, remain handcuffed while being transported within the Courthouse. (*See* Defs.' 56.1 ¶ 9.) The purpose of this protocol is to preserve the safety of judges, court staff, court officers, attorneys, litigants, and members of the public. *Id.* Even if the Court credits Plaintiff's claim that court officers allowed him to have his hands cuffed in front of his body on prior court dates prior (*see* Pltf.'s Opp. at 4, 7), these exceptions to the standard handcuffing protocol do not and cannot create a constitutional entitlement to such treatment. Finally, Plaintiff was scheduled to appear on May 14, 2015 for an arraignment before Judge Neary, not any jury, thus eliminating any argument that presenting him in the courtroom in handcuffs could have prejudiced his right to a fair trial. *See Deck v. Missouri*, 544 U.S. 622, 626-629 (2005) (explaining that the restrictions against presenting the accused in restraints apply only to proceedings before a jury, and not those solely before a judge).

In the absence of any credible argument by Plaintiff that the Sixth Amendment encompasses the right to be handcuffed in the front, and the clear-cut safety rationale underlying the handcuffing requirement, the Court finds, as a matter of law, that the requirement that Plaintiff be handcuffed in the back while being transported to a courtroom did not infringe upon his right to self-representation. Defendants are thus awarded summary judgment on Plaintiff's Sixth Amendment claim.

## II.     Excessive Force Claims

Excessive force claims by pretrial detainees are analyzed under the Fourteenth Amendment's Due Process Clause. *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). To succeed on this type of claim, a pretrial detainee must demonstrate, "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). "Force is excessive if it is 'objectively unreasonable' under the particular circumstances." *McGrier v. City of New York*, 849 F. App'x 268, 271 (2d Cir. 2021) (summary order). Objective reasonableness turns on the "facts and circumstances confronting the[]" officer on the scene, *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (citation and quotation marks omitted), "including what the officer knew at the time," *Kingsley*, 135 S. Ct. at 2473 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "The calculus of reasonableness must embody allowance for the fact that officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force [needed]." *Graham*, 490 U.S. at 397. The Supreme Court has found that the reasonableness of the force used turns on such factors as:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 135 S. Ct. at 2473. These standards apply to both corrections officers within a jail and court officers with custody of pretrial detainees during court appearances. *See, e.g., Carmona v. City of N.Y.,* No. 13-CV-3273, 2016 WL 4401179, at *1 (S.D.N.Y. Mar. 1, 2016).

Finally, "[b]ecause it is so fact-intensive, this reasonableness inquiry is typically inappropriate for resolution on summary judgment." *Scott v. City of New York*, No. 16-CV-834 (NGG) (ST), 2020 WL 208915, at *8 (E.D.N.Y. Jan. 14, 2020). "Nevertheless, summary

judgment in an excessive force case is not precluded if the evidence, viewed in a light most favorable to the plaintiff, would support a directed verdict for the defendants." *Landy v. Irizzary*, 884 F. Supp. 788, 798 (S.D.N.Y. 1995). In particular, "[w]hen the parties disagree as to the existence of a genuine dispute of a material fact, the Court may consult incontrovertible video evidence to determine whether summary judgment is nevertheless appropriate." *Wiles v. City of New York*, 13 Civ. 2898 (TPG), 2016 WL 6238609, at *3 (S.D.N.Y. Oct. 25, 2016)). "[T]he mere existence of a videotape in the record depicting some or all of the events in dispute [is] not…dispositive," but summary judgment is appropriate "where the video evidence in the record is sufficient to 'blatantly contradict[ ]' one party's versions of events." *Davis v. Murphy*, No. 12 CIV. 3297 (PGG), 2018 WL 10070524, at *5 (S.D.N.Y. Sept. 24, 2018) (quoting *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 482 (N.D.N.Y. 2017)) (internal quotation marks omitted); *see also Scott,* 550 U.S. at 378–81 (concluding that video, audio, or other documentary evidence can be considered on summary judgment and may be credited over non-movant's account if it is so "blatantly contradicted by [documetary evidence],…that no reasonable jury could believe [that account]"); *accord Zellner v. Summerlin,* 494 F.3d 344, 371 (2d Cir. 2007).

Plaintiff contends that Defendants exercised excessive force on him on May 14, 2015, both during the altercation within his holding cell, and in an elevator car shortly thereafter. The Court analyzes both incidents in turn.

a.  <u>Cell Altercation</u>

The parties dispute what occurred during the altercation between them in Plaintiff's cell. In short, Defendants claim Plaintiff first shoved Sgt. Paul and then resisted Defendants' attempts to subdue him and place his arms behind his back so that his hands could be cuffed. (*See* Defs.' 56.1 ¶¶ 46-56.) Plaintiff disagrees and asserts the opposite – namely, that Sgt. Paul acted first in

trying "to throw the Plaintiff to the ground," Pltf.'s Opp. at 11, and Defendants punched, kicked, and/or struck him, ECF No. 88-2 at 33:8-37:25.

The Court is usually unable to resolve disputes of fact on summary judgment, but, here, documentary evidence in the form of a video recorded from inside Plaintiff's cell, provides an incontrovertible account of what occurred during the altercation. (*See* Berg Decl. Ex. 7, ECF No. 88-7 ("Cell Vid.").) The video recording demonstrates that Plaintiff indeed placed his hands on Sgt. Paul's chest/shoulder area and pushed him toward one wall of the holding cell. (Cell Vid. at 14:08:00-02.) The other officers then entered the cell and used only their arms and hands to restrain Plaintiff. (Cell Vid at 14:08:00-9:25.) The video does not depict any of the officers punching, kicking, or otherwise striking Plaintiff.

Plaintiff does not disclaim the accuracy of the video recording and, in fact, cites to it to prove his own version of events. (*See* Pltf.'s Opp. at 12.) Plaintiff therefore does "not dispute" authenticity of the video, but rather "only how to characterize [it]." *See Fabrikant v. French*, 691 F.3d 193, 201, n.6 (2d Cir. 2012) (granting summary judgment where parties disputed only the characterization of evidence). In particular, Plaintiff claims the video makes clear that Officer Carroll kicked him because it shows "her foot…in a violent kicking motion." (Pltf.'s Opp. at 12.) The Court disagrees. The video clearly depicts Officer Carroll standing outside the scrum of officers surrounding Plaintiff and looking around to aim where to place her right leg into the scrum to use her foot to restrain Plaintiff. (Cell Vid. at 14:08:45-09:18.) Officer Carroll at no point in the recording, however, swings her leg in a violent kicking motion. Because "[t]he video evidence 'blatantly contradict[s]' [Plaintiff]'s version of events," the Court "disregards [his] unsupported characterization of [the] incident." *See Lagorio v. Hilton Cent. Sch. Dist.*, No. 17-CV-6460MWP, 2020 WL 5226578, at *3 n.5 (W.D.N.Y. Sept. 2, 2020) (quoting *Fana v. City of*

*New York*, No. 15 CIV. 8114 (PGG), 2018 WL 1581680, at *6 (S.D.N.Y. Mar. 27, 2018)) (alteration in original).

The video recording of the altercation makes clear that although the Defendants used "some measure of force," there was no evidence that the Defendants used the type of excessive force described by Plaintiff. *See Benitez v. Healy*, No. 15-CV-1179, 2017 WL 9673721, at *7 (N.D.N.Y. June 7, 2017), *adopted by* 2018 WL 1444218 (N.D.N.Y. Mar. 22, 2018). Although courts are to normally avoid assessing the credibility of testimony on summary judgment motions, they need not adopt wholly self-serving testimony contradicted by the objective evidence in the case. *Deebs v. Alston Transp., Inc.*, 346 F. App'x. 654, 656 (2d Cir. 2009) (stating that self-serving deposition testimony, by itself, "is insufficient to defeat summary judgment" when contradicted by "the hard evidence adduced during discovery"). No reasonable juror could believe certain of Plaintiff's factual averments in opposition to summary judgment, given the contradictory narration provided by the video recording. *See Whittle v. Ulloa*, No. 15 CIV. 08875 (JCM), 2019 WL 110958, at *2 n. 8 (S.D.N.Y. Jan. 4, 2019) ("the Court credits the surveillance footage over Plaintiff's version because a reasonable juror could not credit Plaintiff's version in light of the video evidence"); *Heicklen v. Toala,* No. 08–cv–2457, 2010 WL 565426, at *2 (S.D.N.Y. Feb. 18, 2010), *aff'd sub nom. Heicklen v. Kelly,* 409 Fed.Appx. 457 (2d Cir.2011) (granting summary judgment in part on the basis of facts "supported by incontrovertible video evidence").

Having found that the video recording establishes the conclusive version of events during the altercation in Plaintiff's cell, the Court further holds that, based on this version of events, Defendants used only the minimum amount of force necessary to subdue Plaintiff. Given that Plaintiff was "ignoring lawful orders" to be handcuffed "and resisting [Defendants'] attempt to

resolve the situation," he "raises no dispute of material fact on the question of whether Defendants' limited use of force was reasonable." *See Carmona*, 2016 WL 4401179, at *3. Plaintiff was refusing to be handcuffed, and the Defendants used only their arms and hands to overcome his resistance. (Cell Vid at 14:08:00-9:25.) The Second Circuit has previously found similar uses of force to restrain an individual resisting handcuffing reasonable. *See Kalfus v. New York & Presbyterian Hosp.*, 476 F. App'x 877, 880–81 (2d Cir. 2012) (finding, after reviewing video evidence, that pulling the plaintiff's arms up behind his back, pushing him on his stomach, and handcuffing his hands behind his back was an example of reasonable force). Plaintiff is therefore unable, as a matter of law, to demonstrate that Defendants exercised excessive force against him and Defendants' motion for summary judgment on Plaintiff's excessive force claim regarding the cell altercation is granted.

b. Elevator Incident

The parties again dispute what occurred once Plaintiff was in handcuffs and walked out of his cell. Defendants claim that Sgt. Paul and Officer Gallagher escorted Plaintiff down the hallway toward the elevator, and C.O. Saraireh and C.O. Schafranski followed them. (Defs.' 56.1 ¶¶ 58-59.) Plaintiff was placed into the elevator, at which point C.O. Saraireh and C.O. Schafranski took custody of him, and he took the elevator down to the basement with the two corrections officers. (*Id.* ¶¶ 58-60.) A report prepared at the time by C.O. Saraireh states that he transported Plaintiff to the basement "without any incident." (Declaration of Kamal Saraireh in Support of Defendants' Motion for Summary Judgment, Ex. 1, ECF No. 92-1 ¶ 16.) Plaintiff, however, claims before he could enter the elevator, Sgt. Paul repeatedly slammed his head against the wall of the elevator. (ECF No. 88-2 at 41:1-42:14.)

No video evidence is available of the elevator ride to resolve the parties' factual disputes, however, contemporaneous documentation casts doubt on Plaintiff's testimony of the events. In particular, none of the documents prepared by Plaintiff prior to the filing of the Complaint, including a complaint by him to the UCS Inspector General (ECF No. 88-9), a statement made to DOC a few days after the May 14, 2015 incident (ECF No. 88-10), and a FOIL request nine months later (ECF No. 88-11) mention any incident in the elevator. The Court is troubled by Plaintiff's failure to mention Sgt. Paul's assault in the elevator in three written accounts prior to the filing of this lawsuit. *See Rolkiewicz v. City of New York*, 442 F. Supp. 3d 627, 642–43 (S.D.N.Y. 2020) (holding that "[a]bsent corroborating evidence, testimony that is inconsistent and contradictory may be insufficient to survive summary judgment") (citation omitted) (alteration in original). In particular, Plaintiff did not refer to the purported alleged elevator incident in his complaint to the UCS Inspector General, and instead filled in the blank for "Location of Complaint" with the phrase "Holding Cell." (ECF No. 88-9.) He attributed "marks on my face and body" to the cell altercation, not any alleged elevator incident in his contemporaneous statement to DOC. (ECF No. 88-10.) Finally, he did not seek any documents regarding the alleged elevator incident in his FOIL request, submitted nine months later. (ECF No. 88-11.) Plaintiff has proffered no evidence in support of the alleged elevator incident absent his own, self-serving testimony.

"Although the Court cannot resolve issues of credibility on summary judgment, [Plaintiff's] self-serving, incomplete, and inconsistent recollection is not sufficient to create a genuine dispute of fact in light of [Defendants'] documented evidence." *Lozada v. Delta Airlines, Inc.*, No. 13 CIV. 7388 JPO, 2014 WL 2738529, at *5 (S.D.N.Y. June 17, 2014). The Second Circuit has recognized that, "in the rare circumstance where the plaintiff relies almost

exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine…whether there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (citation omitted). To set aside a plaintiff's self-serving testimony, the testimony must be "so replete with inconsistencies and improbabilities that no reasonable [fact-finder] would undertake the suspension of disbelief necessary to credit the allegations made in his complaint." *Id.* at 555 (internal quotation marks omitted). In *Jeffreys,* the plaintiff concocted a version of events that directly contradicted the story he had consistently given to medical, police, and risk screening personnel before the onset of litigation. *Id.* at 552. Because nothing in the record supported plaintiff's allegations "other than plaintiff's own contradictory and incomplete testimony," the Second Circuit concluded that "[n]o reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in [the] complaint" and affirmed the district court's grant of summary judgment. *Id.* at 555 (internal quotation marks omitted). This case presents similar circumstances where "an assessment of the [P]laintiff's account" is warranted because his testimony is "so replete with inconsistencies," *id.* at 554, 555, and is directly contradicted by documentary evidence, *Lozada*, 2014 WL 2738529, at *5, such as the contemporaneous report of the ride by C.O. Saraireh, a non-party witness, ECF No. 92-1 ¶ 16.

Plaintiff does not even attempt to explain the discrepancy between the Complaint and his prior accounts which fail to mention any alleged elevator incident. Absent any supporting evidence, Plaintiff's inconsistent and self-serving testimony is insufficient to defeat Defendants' motion for summary judgment. *See Deebs,* 346 F. App'x at 656 ("[T]he only 'evidence' cited in plaintiffs' brief is their own self-serving testimony and [the] plaintiffs have 'made no attempt…to

square their own speculative, and subjective, testimony with the hard evidence adduced during discovery. Such evidence is insufficient to defeat summary judgment.'") (quoting *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir. 1985)). Rather, Plaintiff only baldly asserts that a video recording of the alleged elevator incident which supports his version of events exists, but Defendants have refused to turn it over. (Pltf.'s Opp. at 12, 14-15.) Defendants respond, however, that, in light of Plaintiff's failure to mention any elevator incident in his pre-Complaint filings, they were not on notice to preserve footage. The "duty to preserve evidence arises when [a] party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation," but Defendants had no reason to think such footage would be relevant. *See Simoes v. Target Corp.*, No. 11-CV-2032, 2013 WL 2948083, at *3 (E.D.N.Y. June 14, 2013). The Court agrees. This obligation to preserve evidence most commonly arises "when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." *Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir. 1998). *Compare Byrnie v. Town of Cromwell*, 243 F.3d 93, 108 (2d Cir. 2001) (party had notice of duty to preserve before complaint was filed where it had previously received FOIA requests and others had expressed concerns about the subject matter of the suit), *superceded in part on other grounds by Moy v. Perez*, 712 Fed. App'x 38 (2d Cir. 2017) *with Kraus v. Gen. Motors Corp.*, No. 258 03 Civ. 4467 (CM) 2007 WL 3146911, at *2 (S.D.N.Y. Oct. 24, 2007) (defendant had no duty to preserve car as evidence in products liability suit before complaint was filed because it had not been previously notified of any injury that might reasonably lead to litigation and no litigation had been threatened). Defendants were not notified by Plaintiff of any injury which purportedly occurred in the

elevator and might have reasonably led to litigation. As such, they had no duty to preserve any potential footage.

In sum, in the absence of any direct or circumstantial evidence supporting his account of the alleged elevator incident, "no reasonable jury could…credit[]" Plaintiff's "inconsisten[t]" and "improbabl[e]" account. *See Jeffreys*, 426 F.3d at 551. As a result, the Court grants Defendants summary judgment on this issue.[2]

### III.     Tight Handcuffing Claim

In his Opposition, Plaintiff asserts that Defendants injured his shoulder by restraining him with a single pair of handcuffs, instead of linking two sets of handcuffs together to accommodate his "wide" shoulders. (*See* Pltf.'s Opp. at 8; *id*. at 12 (asserting that "only one pair of handcuffs were [sic] formally applied behind the Plaintiff's back[,] which further caused the shoulder injury").) To the extent Plaintiff is attempting to raise a novel claim for excessively tight handcuffing, the Court does not permit him to amend his Complaint in this manner. The Complaint contains no reference to an excessive force claim alleging overly tight or forceful handcuffing. "A party is not entitled to amend his complaint on summary judgment." *Lewis v. Lee*, 737 F. App'x 24, 29 (2d Cir. 2018); *see also Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701-702 (2d Cir. 2010) (rejecting a claim raised for the first time in opposition to a summary judgment motion); *Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99 Civ. 10 10452 (GBD), 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004) ("A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers") (citation omitted). "[T]he central purpose of a complaint is to provide the defendant with notice of the claims asserted against it."

---

[2] Because the Court grants summary judgment on the merits of both of Plaintiff's excessive force claims, it does not reach the question of qualified immunity for any of the Defendants, *see Farrell v. Burke*, 449 F.3d 470, 499 n.14 (2d Cir. 2006); *Carmona*, 2016 WL 4401179, at *3 n. 3, nor the question of whether Plaintiff's purported injuries were *de minimis* in nature.

*Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006). Plaintiff did not provide Defendants notice that he might argue that the manner in which they applied handcuffs to him on May 14, 2015 was overly tight and excessive in force. In light of this omission, the Court will not now consider Plaintiff's new theory of liability.

## CONCLUSION

Defendants' Motion for summary judgment is GRANTED and all of Plaintiff's claims are dismissed with prejudice. The Clerk of Court is kindly directed to terminate the motion at ECF No. 87, issue judgment in favor of Defendants, and close the case. The Clerk of Court is further directed to mail a copy of this Order to *pro se* Plaintiff at Plaintiff's address listed on ECF and to show service on the docket.

Dated: February 26, 2024                                    SO ORDERED:
White Plains, New York

 

 

_____
NELSON S. ROMÁN
United States District Judge